(8 Misc. Rep. 652.)

### SCHNEIDER v. CITY OF ROCHESTER.

(Supreme Court, Special Term, Monroe County. May, 1894.)

CONDEMNATION PROCEEDINGS—CONSTITUTIONAL LAW.
  Rochester City Charter (Laws 1880, c. 14), § 179, which authorizes the city council to set aside the report of commissioners in condemnation

proceedings solely on the ground that the amount of damages is greater than it wishes to pay, violates Const. art. 1, § 7, which provides that compensation shall be ascertained by a jury or by commissioners.

Action by Matilda Schneider against the city of Rochester. Plaintiff moves for an injunction. Granted.

Elbridge L. Adams and Waldo G. Morse, for plaintiff.
C. D. Kiehel, for defendant.

YEOMAN, J. The defendant instituted proceedings under its charter to condemn a piece of land for street purposes. Commissioners were appointed to assess the damage, which they assessed at $40,000. The report of the commissioners was presented to the common council, and the committee appointed a time for hearing objections to its confirmation. At the time appointed no one made objection, but a motion was made by a member of the common council that the report be set aside, and the city attorney be instructed to procure the appointment of another commission. At that time this plaintiff, by her counsel, demanded that the common council either confirm the report or abandon the proceedings. The motion, however, was carried, and the city attorney is proceeding to procure the appointment of a new commission in that proceeding. The injunction is asked to restrain the city and its attorneys from so doing. The plaintiff takes the position that such proceeding is unauthorized. The city justifies its course under section 179 of its charter (Laws 1880, c. 14), which provides:

"Upon the filing of such report the said common council shall assign a time for hearing objections to the confirmation thereof, and at the time assigned shall hear the allegations of all persons interested, and may take proof in relation thereto from time to time, and shall confirm the said report, or may set the same aside and refer the matter to the same or to new commissioners to be appointed by the said court as before, who shall thereupon proceed as hereinbefore provided. But the common council may set aside said report and abandon said improvement at any time before the final confirmation of the assessment roll hereafter mentioned."

The plaintiff does not question the right of the city to take the land by condemnation proceedings, but claims (1) that this section, properly construed, does not give the common council of the city power to set aside a report solely upon the ground that the amount of damages is greater than it wishes to pay for the land, and then procure the appointment of another commission in the same proceedings to again assess the damages; and (2) that, if this section does mean that the common council has such power, then that the section is unconstitutional and void. The plaintiff contends that this section gives power to the common council to set aside the report, and have a new commission appointed, only when the owner objects to the report. Its terms seem hardly to bear such a construction, and it would be without real purpose if they did; for, surely, if the owner desires the report vacated, and the common council acquiesce, the statute would not be needed to permit them to carry out the desire of both.

The court should not hastily, or without careful deliberation, declare a statute unconstitutional. "A law which has received

the sanction of the legislature and the approval of the executive should only be held void, as repugnant to the constitution, when the repugnancy is clearly demonstrated. There should be no reasonable doubt of the unconstitutionality of a statute before it should be annulled by judicial action." People v. Albertson, 55 N. Y. 54. Neither should a court shrink from the grave responsibility of declaring a statute unconstitutional when it has reached that conclusion, for upon its faithfulness depends the protection of person and property. The constitution of the state provides (article 1, § 6), "No person shall be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation;" and also (article 1, § 7), "When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." The plaintiff urges that under this provision of the charter the city cannot take this property without "just compensation," and that it is now attempting to do so. It is perhaps fair to presume that, no matter how many successive commissions the city may procure the appointment of to fix the value of this property which it desires to take by force from the plaintiff, it will not be able to get the property without paying a substantial sum for it. The fact that it will pay something for the property does not, however, give it a right to take it. To acquire that right, it must make just compensation. It is obvious that just compensation would be, in this case, the value of the land taken. How is the value to be ascertained? It cannot be reached with absolute certainty. It is a matter of judgment, and men will differ greatly in their judgment concerning it. Therefore, the only means of reaching a just valuation is to provide some just means of fixing this valuation. This the constitution has sought to do. It says that the compensation shall be ascertained by a jury, or by not less than three commissioners. This does not declare, in terms, that a party may not have, at his election, three commissioners appointed as many times in succession as he may choose, in order that he may finally find a commission that will fix upon an amount with which he is satisfied. If the language of the constitution were of doubtful construction, could any one suppose that the men who framed it thought any such result possible? Such a one-sided proceeding, in determining the rights of parties, shocks the sense of justice. There is not a small boy on the street who would not protest against, and defend himself against, the application of any such principle of inequality, when applied where his rights came in question. The language of the constitution is, however, plain. It means that one jury or one commission, conducted so that it reaches its results by proper methods, is to fix the rights of the parties in this regard. I am not aware that this question has heretofore been before the courts of this state. It has, however, been discussed in Rogers v. City of St. Charles, 3 Mo. App. 41, in which the court says:

"We cannot perceive what possible advantage can arise from the constitutional declaration that private property shall not be taken for public use without just compensation, if the state, or any of its deputies, exercising the right of eminent domain, may cause as many inquests as it pleases of the value of the property to be condemned, and set aside as many of them as it sees fit, until one is found sufficiently small to suit its notions of a just compensation, and then to declare it to be so. Of course, this permits one of the parties to a controversy to determine a judicial question in his own favor, and compel the other party to submit to the decision. We cannot conceive of a grosser solecism, nor of one more at war with the institutions and laws of Missouri. * * * To allow the state, or any deputy of the state, to pronounce a particular piece of property necessary or unnecessary, according to the terms on which it may be possible to acquire it; to enable the state, or any corporation, to be the sole judge of the due correspondence between the property and its variously estimated value, to cause a thousand estimates to be made, and to have the unrestricted right of rejecting, toties quoties, every estimate which did not suit its views,—would be thought an extravagant idea of arbitrary power, if it were imagined in a satire."

The motion should be granted, with $10 costs. Motion granted, with $10 costs.